**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **CANDICE STEPHENS** and **MAKITA RAINEY**, individually, and on behalf of others similarly situated, | : : : : | Case No: |
|  | : : | Hon. |
| Plaintiffs, | : : | Mag. |
| v. | : : |  |
| **TRANSWORLD SYSTEMS, INC.,** and **NATIONWIDE CREDIT, INC.,** jointly and severally, | : : : : : |  |
| Defendants. | : |  |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Candice Stephens and Makita Rainey ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants, Transworld Systems, Inc. ("TSI") and Nationwide Credit, Inc., ("Nationwide") (collectively "Defendants"), and state as follows:

## I.       INTRODUCTION

1.       This is a collective and class action complaint brought pursuant to 29 U.S.C. §216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., the South Carolina Payment of Wages Act, S.C. Code ann. §§ 41-10-10, et seq. ("South Carolina Wage Act"). and common law.

2.       Transworld Systems, Inc. states "[They] are a customer-first provider of customer relationship outsourcing services, accounts receivable management, loan servicing and legal services for many of the world's leading companies. [They] have over 50 years of experience in

handling customer contacts and interactions across a broad spectrum of industries."[1]

3.    In order to provide the aforementioned services, Defendants employ hourly (non-exempt) representatives and agents with a number of job titles, including but not limited to Call Center Representative, Collections Representative, and Customer Service Representative (hereinafter collectively referred to as "Representative" or "Representatives").

4.    Regardless of the specific job title all Representatives are paid on an hourly basis; are classified as non-exempt employees; use the same timekeeping system(s); use many (if not all) the same computer programs; are subject to the same relevant timekeeping and attendance policies; and have the primary job duty of providing assistance to the clients' customers.

5.    The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry. DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA).[2] One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.    The Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including

---

[1] *See* https://tsico.com/about/ (last visited June 27, 2024).
[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited June 27, 2024).

time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

7.     Defendants do not compensate their Representatives, like Plaintiffs, for all work performed.  Instead, Defendants required their Representatives to perform compensable work tasks before their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendants' timekeeping system.  This corporate policy and practice results in Representatives not being paid for all time worked.

8.     In particular, Defendants required their Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Representatives only clocked in and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "available" when their scheduled shifts began.

9.     Defendants, through their managers, had actual and constructive knowledge that their Representatives were completing this off-the-clock work without compensation. Nevertheless, Defendants suffered or permitted, and in fact, trained and required, their Representatives to complete this unpaid work.

10.    Defendants' practice of failing to compensate their Representatives for all hours worked violated the Representatives' rights under the FLSA.

11.    The individuals Plaintiffs seek to represent in this action are current and former Representatives who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendants' violations of law.

12.    Defendants knew or could have easily determined how long it takes their Representatives to complete the pre-shift start-up/log-in process and could have properly

compensated Plaintiffs and other Representatives for the work that they performed, but did not.

13.     As a result of Defendants' willful failure to compensate Plaintiffs and all similarly situated employees at a rate not less than 1.5 times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§201 et seq., including 29 U.S.C. §§ 207(a)(1), 215(a) and 29 C.F.R. §§778.104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

14.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> *All current and former hourly representatives who worked for Defendants at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

15.     Defendants are liable for their failure to pay their Representatives for all work performed and for hours worked in excess of 40 per week.

16.     Representatives who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre- and mid-shift work performed for Defendants, and for all hours worked in excess of 40 per week at 1.5 times their regular rate of pay, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 201, *et seq*.

## II.     JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

18.     Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained

against any employer . . . in any Federal or State court of competent jurisdiction."

19.     Defendant Transworld Systems, Inc. ("TSI"), is a California Corporation with its principal place of business located at 150 North Field Drive, Lake Forest, Illinois 60045.

20.     TSI's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  TSI's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

21.     This Court has specific personal jurisdiction over Defendant TSI, because it conducts business within the state of Illinois, maintains its principal place of business in Illinois, is registered with the Illinois Secretary of State, and employs individual within the state of Illinois and throughout the United States.

22.     Defendant Nationwide Credit, Inc. ("Nationwide"), is a Georgia Corporation with its principal place of business located at 150 North Field Drive, Lake Forest, Illinois 60045.

23.     Nationwide's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Nationwide's Representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24.     This Court has specific personal jurisdiction over Defendant Nationwide, because it conducts business within the state of Illinois, maintains its principal place of business in Illinois, and employs individuals within the state of Illinois and throughout the United States.

25.     Defendants are engaged in a single, integrated "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et. seq*; 29 C.F.R. § 791.237.

26.     This Court has diversity jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiffs and Defendants reside in different states.

27.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of their federal claims.

28.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because all Defendants are subject to personal jurisdiction in this District and the unlawful activities at issue in this case arose from Defendants' activities in this District.

29.     All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

### III.     PARTIES

**A.  Plaintiffs**

30.     Plaintiff Candice Stephens is an adult resident of Augusta, Georgia and was employed by Defendants remotely from her home from approximately March 22, 2022 until July 21, 2022.  Plaintiff signed a consent to join this collective action lawsuit, **Exhibit A**.

31.     Plaintiff Makita Rainey, is an adult resident of Aiken, South Carolina and was employed by Defendants in their North Augusta, South Carolina location from approximately May 17, 2021 until the present.  Plaintiff signed a consent to join this collective action lawsuit, **Exhibit B**.

32.     Additional putative collective members were or are employed by Defendants throughout the United States as non-exempt call center representatives ("Representatives") during the past three years and their consent forms will also be filed in this case.

**B.  Defendants**

33.     TSI is "A leading technology enabled BPO partner providing receivables

management, customer care, back office support and consumer loan servicing."[3]

34.     TSI employs thousands of hourly representatives throughout the United States to carry out its services.  According to TSI's website, "TSI is the largest accounts receivables management company in the U.S. […], and also one of the largest providers of customer care and loan servicing, healthcare revenue cycle management and business process outsourcing."[4]

35.     In or around March 2019, Defendant TSI entered into "a definitive agreement with subsidiaries of Altisource Portfolio Solutions S.A. to purchase its Financial Services business for $44 million.  [It] acquire[d] the Altisource Financial Services business, including **Nationwide Credit, Inc**., a provider of collections, customer relationship management and call center outsourcing for financial, retail credit, mortgage servicing, insurance, utility, and hospitality industries, with approximately 2,300 employees and operations centers in the United States, […]."[5] (emphasis added).

36.     Upon information and belief, Defendant Nationwide, upon its acquisition by Defendant TSI, and after, is believed to have locations in the following cities and states:

   a.   Phoenix, Arizona;

   b.   Tempe, Arizona;

   c.   Sacramento, California;

   d.   Lauderdale Lakes, Florida;

   e.   Atlanta, Georgia;

   f.   Kennesaw, Georgia;

---

[3] *See* https://tsico.com/ (last visited July 8, 2024).
[4] *See* https://tsico.com/why/ (last visited July 8, 2024).
[5] *See also* https://tsico.com/news/tsi-agrees-to-acquire-altisource-portfolio-solutions-s-a-s-financial-services-business/ (last visited July 8, 2024).

     g.  Lake Forest, Illinois;

     h.  Binghamton, New York;

     i.  Endicott, New York;

     j.  Vestal, New York;

     k.  Tulsa, Oklahoma;

     l.  Fort Washington, Pennsylvania; and

     m.  Houston, Texas.

37.    Upon information and belief, Defendant TSI is believed to have locations in the following cities and states:

     a.  Phoenix, Arizona;

     b.  Atlanta, Georgia;

     c.  Augusta, Georgia;

     d.  Lake Forest, Illinois;

     e.  Somerset, Kentucky;

     f.  Norwell, Massachusetts;

     g.  Augusta, Maine;

     h.  Springfield, Missouri;

     i.  Columbus, Ohio;

     j.  Mason, Ohio;

     k.  Tulsa, Oklahoma;

     l.  Fort, Washington, Pennsylvania;

     m.  North Augusta, South Carolina;

     n.  Houston, Texas;

    o.   Gainesville, Virginia; and

    p.   Federal Way, Washington.

38.    Regardless of which Defendants employees receive pay statements from, those employees were subject to substantially the same working conditions and practices.

39.    From at least on or around March 2019 to the present, Defendant Nationwide was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40.    Defendant TSI is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## IV.    GENERAL ALLEGATIONS

41.    Defendants maintain brick-and-mortar call centers and allow for remote work. Defendants provide debt collection services for their customers in addition to providing other services such as accounts receivable management and loan servicing.

42.    Defendants have employed hundreds of Representatives over the past three years at their brick-and-mortar call centers and remotely to handle consumer and customer phone calls concerning various issues.

43.    Defendants compensated their Representatives on an hourly basis and classified them as non-exempt employees under the FLSA.

44.    Throughout their employment with Defendants, Plaintiffs and other Representatives were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

45.    Defendants paid their Representatives at varying hourly rates.

46.    Defendants' Representatives typically worked five days each week and up to forty (40) or more hours per week.

47.     In order to perform their job duties, Plaintiffs and Representatives were required to use a computer and a variety of essential and indispensable computer programs, applications and servers.

48.     Prior to being hired, Representatives received an offer from Defendants that set forth the requirements of a Representative, the job duties, and the offered rate of pay.

49.     Upon information and belief, Defendants maintain documents that demonstrate the promised hourly wage for each Representative, including, but not limited to, offer letters, paystubs, and/or other payroll records.

50.     Plaintiff Stephen's received such an offer from Defendants to serve as a Representative, and she accepted Defendants' offer with the understanding that her base wage, most recently $15.00 per hour, would be paid as promised.

51.     Plaintiff Rainey received such an offer from Defendants to serve as a Representative, and she accepted Defendants' offer with the understanding that her base wage, most recently $11.25 per hour, would be paid as promised.

52.     Plaintiffs performed under the contract by carrying out their job duties and responsibilities.  More specifically, Plaintiffs would work with Defendants' clients' customers to assist with tech support, billing inquiries, customer retention, and debt collection.  The aforementioned services were provided via inbound and outbound calls and Plaintiffs would utilize Defendants' applications and systems to track all events and customer service information. Plaintiffs additionally performed the required off-the-clock work explained below.

53.     Once hired, Defendants provided all Representatives, like Plaintiffs, with, *inter alia*, training on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how

to track their time in Defendants' timekeeping system; attendance, schedule and call quality expectations; and Defendants' policies related to each topic. The training Representatives received was substantially, if not entirely, the same and all Representatives were subject to the same and/or substantially similar policies and quality assurance reviews.

54.     At the start of each workday, Plaintiffs and all other Representatives are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other Representatives are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete or nearly complete and they place themselves in "phone ready" status.

55.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Representatives.

56.     Additionally, Defendants maintained schedule adherence and attendance metrics pursuant to which they monitored the Representatives' clock-in times and "phone ready" hours. Defendants enforced these policies and procedures by routinely evaluating, and at times disciplining, Representatives. This discipline included, but was not limited to, assigning Representatives pre-determined point values for infractions, issuing write-ups and final notices, and termination.

57.     Plaintiffs and other similarly situated Representatives are instructed to be "phone ready" the moment their scheduled shift starts. This requires Defendants' Representatives to be logged in and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they can be prepared to take calls the moment their shift begins. During the boot-up and login process, Representatives often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

58.     All of the Representatives use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.  These programs and applications are an integral and important part of the Representatives' work and they cannot perform their jobs without them.

59.     The pre-shift off-the-clock time Plaintiffs and all other Representatives spend booting up and logging into their computers directly benefits Defendants and is integral and indispensable to the Representatives' job responsibilities.

60.     Despite knowing Plaintiffs and all other Representatives perform this pre-shift work, Defendants, and their managers failed to make any effort to stop or disallow it and instead suffered or permitted it to happen.

61.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiffs and all other Representatives boot up and log into their computers each day, along with the time they log into their telephone systems.

62.     Upon information and belief, Defendants also possess, control, and/or have access to information and electronic data indicating when Plaintiffs and all other Representatives experience downtime due to technical issues.

63.     Because Defendants require their Representatives to perform pre-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time Representatives spend working for Defendants.  Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they worked.

64.     Plaintiffs, and similarly situated Representatives, regularly worked overtime and non-overtime hours for which they were not paid the appropriate overtime rates, in breach of Defendants' contracts with their Representatives.

A. **Pre-Shift Off-the-Clock Work**

65.     Pursuant to Defendants' policies, training and direction, Plaintiffs and all other Representatives are required to perform daily off-the-clock tasks such as turning on or warming-up their computer, waiting for their computer to turn on; logging into the VPN using their username and password; and then starting up and logging into various software programs/applications, such as ADP, Saba, and Sparc, to access information.

66.     Defendants use their attendance/schedule adherence policies to pressure their Representatives into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

67.     Plaintiffs and all other Representatives are required to boot up and log into various computer networks, software programs, and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other Representatives are not actually "clocked in" for their shifts until *after* the computer boot-up and login process is complete or nearly complete and they place themselves in "phone ready" status.

68.     The off-the-clock pre-shift process took substantial time on a daily basis, approximately fifteen (15) to thirty (30) minutes per shift.  Specifically, before each shift Representatives were required to undertake the following essential work tasks:

a.  The Representatives woke up/turned on their computer;

b.  After waiting for the computer to wake up/boot up, the Representatives were prompted to log in to Windows using their username and password;

c.  Upon turning on their computer and logging into Windows the Representatives then had to connect to Defendants' Virtual Private Network ("VPN")[6];

d.  The Representatives then logged into Microsoft Office;

---

[6] Applied only when the Representatives worked remotely.

e.  The Representatives would then open Microsoft Teams;

f.  The Representatives would open SPARC;

g.  Following that the Representatives would open other programs such as LIHEAP (Low Income Home Energy Assistance Program, a federally-funded program that helps low-income households pay for home energy costs) which they used to locate financial programs for those callers;

h.  After the Representatives opened LIHEAP they would proceed to open the specific clients' program that contained their customer base where the Representatives could access all the necessary information regarding account numbers, bill information, etc.;

i.  The Representatives would then open Saba to enable them to clock in and out for their shift;

j.  The Representatives would open their Cisco phone program;

k.  The Representatives would then clock in using the previously opened Saba program and then place themselves in "phone ready" through the Cisco Phone program and begin receiving calls at the moment their shift began.

69.     The above tasks take substantial time on a daily basis with said time ranging from fifteen (15) to thirty (30) minutes per day, and even longer when Defendants' computer networks and programs were not working properly.

70.     The Representatives frequently encountered technical problems while performing this boot-up and login process, which often caused the process to take longer than thirty (30) minutes.

71.     Defendants' Representatives did not actually clock in for their shifts until the start of their scheduled shifts; meaning that Plaintiffs and all other Representatives worked off-the-clock for at least fifteen (15) to thirty (30) minutes (or more) before each shift for which they were never compensated.

72.     If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work

necessary to be "phone ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

73. Defendants' Representatives were only compensated for the time spent on the phone or in "phone ready" status.

74. Because Defendants' Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 time their regular rate of pay.

75. Defendants had express and constructive knowledge that their Representatives began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and clocked in on time.

76. Defendants also had express and constructive knowledge that their Representatives frequently experienced technical problems with their computers or phones during the boot-up and login process.

77. Defendants' policies and practices discouraged their Representatives from recording all time worked.

78. The unpaid off-the-clock work performed prior to each shift by Plaintiffs and other Representatives is compensable, directly benefits Defendants and the tasks undertaken in connection with the off-the-clock work, are integral and indispensable to their job duties and responsibilities as Representatives.

**B. Technical Down Time**

79. Additionally, in the course of performing their jobs, Plaintiffs and other Representatives regularly experienced technical problems with their computer systems, which log them out of the timekeeping systems, and cause them to redo some or all of the boot-up process.

80.    In these situations, the Representatives can spend up to thirty (30) minutes or longer working with Defendants' technical team to resolve the problem(s).

81.    Defendants did not compensate Plaintiffs and other Representatives for technical downtime.

82.    Defendants are aware of the time Representatives spend experiencing technical difficulties and working with Defendants' technical team to resolve these difficulties, and Defendants can pay Representatives for this time, but does not.

C.    **The Off-the-Clock Work Results in Viable "Gap Time" Claims**

83.    "Pure gap time claims seek straight time wages for unpaid work during pay periods without overtime." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014). "[O]vertime gap time pay is compensation for unpaid hours worked during the course of a 40 hour workweek when a plaintiff alleges that he/she worked in excess of 40 hours in a workweek and was not compensated for both overtime work (work in excess of 40 hours) and straight time work (work up to 40 hours)." *Rosario v. First Student Mgmt. LLC*, 2016 WL 4367019, at *4 (E.D. Pa. Aug. 16, 2016) quoting *Hensley v. First Student Mgmt., LLC*, 2016 WL 1259968, *2 (D.N.J. Mar. 31, 2016).

84.    Plaintiffs and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

85.    During the weeks that Representatives do not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight-time wages, in breach of Defendants' contracts with their Representatives.

D.    **Exemplary Pay Period to Illustrate Pre-Shift Compensation Deficiencies**

86.    Specific workweeks where Defendants failed to Pay Plaintiff Stephens all overtime

due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 6/4/22 to 6/17/22

- Plaintiff was paid at a rate of $15.00 per hour for her 78.92 regular hours and $22.50 per hour for her 1.08 overtime hours.

- With unpaid pre-shift, in a range of fifteen (15) to thirty (30) minutes per shift, at ten shifts per pay period, Plaintiff should have been paid an additional one hundred fifty (150) to three hundred (300) minutes at her overtime rate of $22.50 during the pay period.

**Exhibit C**, Stephens Pay Stub.

87.    Specific workweeks where Defendants failed to Pay Plaintiff Rainey all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 4/22/23 to 5/5/223

- Plaintiff was paid at a rate of $11.25 per hour for her 78.75 regular hours and $16.8750 per hour for her 2.92 overtime hours.

- With unpaid pre-shift, in a range of fifteen (15) to thirty (30) minutes per shift, at ten shifts per pay period, Plaintiff should have been paid an additional one hundred fifty (150) to three hundred (300) minutes at her overtime rate of $16.8750 during the pay period.

**Exhibit D**, Rainey Pay Stub.

### E.  Defendants Benefitted from the Representatives' Off-the-Clock Work

88.    At all relevant times, Defendants have required and directly benefitted from the off-the clock work performed by Plaintiffs and all other Representatives in connection with the pre-shift activities described above.

89.    At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Representatives.

90.    At all relevant times, Defendants have been able to track the amount of time

Plaintiffs and all other Representatives spend in connection with the pre-shift activities; however, Defendants have failed to do so and have failed to compensate Plaintiffs and all other Representatives for the off-the-clock work they performed.

91.     At all relevant times, Plaintiffs and all other Representatives have been non-exempt hourly employees, subject to the requirements of the FLSA.

92.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiffs and the Representatives in order to pressure them into performing pre-shift work off-the-clock.

93.     Defendants expressly trained and instructed Plaintiffs and all other Representatives to perform these off-the-clock work activities when they were not clocked into Defendants' timekeeping system.

94.     Defendants instructed Representatives to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of fifteen (15) to thirty (30) minutes per day, but Defendants prohibited Representatives from clocking into the timekeeping software and marking themselves "phone ready" before the start of the scheduled shift while simultaneously requiring the Representatives to be phone ready the moment their shifts begin.

95.     At all relevant times, Defendants' policies and practices deprived Plaintiffs and the Representatives of wages owed for the pre-shift activities they performed.

96.     During the weeks that Representatives work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

97.     Defendants are in possession of the payroll and timekeeping records that will

illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

98.     Defendants have known or should have known that the time spent by Plaintiffs and other Representatives in connection with pre-shift activities is compensable under the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith by not compensating the Representatives for the time at issue in this action.

99.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA-mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## V.     FLSA COLLECTIVE ACTION ALLEGATIONS

100.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly representatives who worked for Defendants at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective").  Plaintiffs reserve the right to amend this definition if necessary.

101.     Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiffs and others similarly situated.

102.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

103.     Resolution of this action requires inquiry into common facts.

104. Defendants are engaged in a common "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

105. Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiffs and all others similarly situated in violation of the FLSA.

106. Consistent with Defendants' policies and practice, Plaintiffs and the proposed FLSA Collective were not paid all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

107. All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work Plaintiffs and the proposed FLSA Collective performed.

108. As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but it not limited to:

    a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

    b. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, for other off-the-clock work, such as technical downtime; the pre-shift boot-up process; and

    c. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, have worked for the benefit of Defendants.

109. Defendants are aware, or should have been aware, that federal law requires them to

pay Plaintiffs and the proposed FLSA Collective members an appropriate overtime premium for all hours worked in excess of forty (40) per workweek.

110.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

111.    Upon information and belief, Defendants utilized a centralized payroll system that calculated overtime pay for all similarly situated employees in the same or similar manner.

112.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The employee on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policies, or plans; and (d) they claims are based upon the same factual and legal theories.

113.    The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated pre-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

114.    There are many similarly situated current and former Representatives who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

115.    Conditional certification of this case as a collective pursuant to 29 U.S.C. § 216 is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and allowed to opt-in for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages

and/or interest, and attorneys' fees and costs and under the FLSA.

116.    All of the estimations discussed herein will be refined after class discovery is completed.

###    VI.    RULE 23 SOUTH CAROLINA STATE LAW CLASS ALLEGATIONS

117.    Plaintiff Rainey brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former hourly Representatives who worked for Defendants at any location in South Carolina time during the applicable statutory period*

(hereinafter referred to as the "Rule 23 South Carolina Class").  Plaintiff Rainey reserves the right to amend this definition if necessary.

118.    The members of the Rule 23 South Carolina Class are so numerous that joinder of all Rule 23 South Carolina Class members in this case would be impractical.  Plaintiff Rainey reasonably estimates there are hundreds of Rule 23 South Carolina Class members.  Rule 23 South Carolina Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

119.    There is a well-defined community of interests among Rule 23 South Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 South Carolina Class.  These common legal and factual questions, include, but are not limited to, the following:

   a.    Whether Rule 23 South Carolina Class members performed unpaid pre-shift work activities, and if so, whether such work activities are compensable; and

   b.    Whether Rule 23 South Carolina Class members are owed wages for time spent performing pre-shift work activities, and if so, the appropriate amount thereof.

120.    Plaintiff Rainey's claims are typical of those of the Rule 23 South Carolina Class in that Rainey and all other Rule 23 South Carolina Class members suffered damages as a direct

and proximate of Defendants' common and systemic payroll policies and practices. Plaintiff Rainey's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 South Carolina Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 South Carolina Class members.

121.     Plaintiff Rainey will fully and adequately protect the interests of the Rule 23 South Carolina Class and Plaintiff Rainey retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff Rainey nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

122.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

123.     This case will be manageable as a Rule 23 class action. Plaintiff Rainey and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

124.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

125.     Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class, and because declaratory relief is appropriate in this case with

respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## VII.     RULE 23 NATIONWIDE CLASS ALLEGATIONS

126.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly Representatives who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

127.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

128.    There is a well-defined community of interests among the Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each session is compensable;

b.    Whether the technical downtime Rule 23 Nationwide Class members spend troubleshooting is compensable;

c.    Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

      d.   Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

129.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

130.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

131.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

132.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

133.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

134.    Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, et seq. – FAILURE TO PAY OVERTIME**

135.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

136.    At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

137.    At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

138.    At all times to this action, Plaintiffs and the FLSA Collective members were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

139.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

140.    Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

141.    Plaintiffs either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

142.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour

worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

143. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

144. At all times to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiffs and all the FLSA Collective members to work off-the-clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks and the federally mandated overtime compensation for all work performed.

145. The off-the-clock performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities, was significant.

146. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiffs and the FLSA Collective's regular hourly rate.

147. As a result of Defendants' unlawful policies and practices, Plaintiffs and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

148. Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective members for all work activities, but did not.

149.    As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

### COUNT II
### RULE 23 SOUTH CAROLINA CLASS ACTION
### VIOLATIONS OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT, S.C. CODE ANN. §§ 41-10-10, *et seq.* (SOUTH CAROLINA WAGE ACT")

150.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

151.    The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, et seq.; provides that "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

152.    Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

153.    At all times relevant to this action, Defendants were employers covered by the overtime and wages mandates of the South Carolina Wage Act, and the Rule 23 South Carolina Class employee entitled to the South Carolina Wage Act's protections.

154.    The South Carolina Wage Act entitles employees to compensation for every hour worked in a workweek.

155.    The South Carolina Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week.

156.    Defendants violated the South Carolina Wage Act by regularly and repeatedly failing to compensate the Rule 23 South Carolina Class for the time spent on work activities described in this Complaint.

157.    Defendants' uniform policy and practice, as described above, left them without any bona fide dispute as to why they failed to pay Plaintiff Rainey and the South Carolina Class members for all time worked.

158.    As a result, the Rule 23 South Carolina Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 South Carolina Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the South Carolina Wage Act an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

159.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

160.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendants.

161.    Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiffs accepted and performed, but Defendants failed to perform by paying Plaintiffs and the Rule 23 Nationwide Class the promised wages.

162.    For example, Defendants offered to compensate Plaintiff Stephens at a minimum of

$15.00 per hour and Plaintiff Rainey at a minimum of $11.25 per hour if they agreed to perform services for Defendants as a Representative. Plaintiffs accepted Defendants' offer and performed their duties as Representatives in reliance on the offer.

163.    Defendants breached their contractual promises by failing to pay Representatives at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

164.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $11.25 – $15.00 per hour within the applicable period.

165.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift work described herein.

166.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

167.    Defendants can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

168.    Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA

are inadequate in this case to the extent Defendants paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

169.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

170.     As a direct and proximate result of Defendants' contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

171.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

172.     This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

173.     At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

174.     Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

175.     By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

176. Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

177. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

178. Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

179. Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

180. Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

181. As a direct and proximate result of Defendants' actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs request the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 South Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's South Carolina state law claims (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class)

pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract claim (Count III);

d.      An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' unjust enrichment claim (Count IV);

e.      An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

f.      An Order designating the Plaintiffs as representative of the FLSA Collective, the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

g.      An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.      An Order declaring Defendants' violations of the FLSA were willful;

i.      An Order declaring Defendants violated South Carolina state law for failing to pay Plaintiff and the Rule 23 South Carolina Class the minimum wage and overtime compensation to which they were entitled;

j.      An Order declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.      An Order declaring Defendants were unjustly enriched by the off-the-clock work it required Plaintiffs and the members of the Rule 23 Nationwide Class to perform;

l.      An Order granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs, the FLSA Collective, the Rule 23 South Carolina Class, the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

m.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

n.      An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

o.      An Order awarding such other and further relief as this Court deems appropriate.

Dated: August 15, 2024                    Respectfully Submitted,

> */s/ Kevin J. Stoops*
> Kevin J. Stoops (P64371)
> Kathryn E. Milz (IL 6297213)
> SOMMERS SCHWARTZ, P.C.
> One Towne Square, 17th Floor
> Southfield, Michigan 48076
> Telephone: 248-355-0300
> kstoops@sommerspc.com
> kmilz@sommerspc.com
>
> *Attorneys for Plaintiffs and the Putative*
> *Collective/Class Members*